IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BELINDA BULLARD | § | |
| *Plaintiff* | § | |
| | § | |
| | § | |
| vs. | § | C.A. No.H-10-735 |
| | § | |
| | § | |
| LIFE INSURANCE COMPANY OF | § | |
| NORTH AMERICA | § | |
| *Defendant* | § | |

## PLAINTIFF BELINDA BULLARD'S FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES BELINDA BULLARD, Plaintiff, and files this First Amended Complaint asserting causes of action for relief at law and equity against Defendant LIFE INSURANCE COMPANY OF NORTH AMERICA, incorrectly named in Plaintiff's Original Complaint as INSURANCE COMPANY OF NORTH AMERICA. Plaintiff, by the undersigned counsel, avers on personal knowledge as to herself and her own acts and beliefs, that legally sufficient evidence exists, or will exist after a reasonable opportunity for further investigation and discovery, to support the following:

## I.
## PARTIES

1. Plaintiff, Belinda Bullard, is a resident of Harris County, Texas, and beneficiary, as defined by 29 U.S.C. §§ 1002 (7) and (8), of the employer welfare benefit plan, (the "Plan"), of Exterran Energy Solutions, L.P., (hereinafter "Exterran"), the employer of her deceased son, Darnell Berryman,

2. Pursuant to 29 U.S.C. §1132 (h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration at 200 Constitution Avenue N.W., Washington, D.C. 20210, and the Secretary of Treasury at 1500 Pennsylvania Avenue N.W., Washington, D.C. 20220 by certified mail, return receipt requested.

3. Defendant, Life Insurance Company of North America is an insurance company authorized to do business in the State of Texas and which may be served through its registered agent, CT Corporate System, 350 N. St. Paul Street, Dallas, Texas 75201.

## II.
## JURISDICTION AND VENUE

4. This action against Defendant arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq. This Honorable Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

5. Plaintiff has complied with all prior requirements and conditions necessary for filing this lawsuit.

6. Plaintiff has exhausted the administrative remedies made available to her by Defendant.

7. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because a substantial part of the events giving rise to Plaintiff's claim arose here and one or more to the breaches of which Plaintiff complains occurred here.

## III.
## STATEMENT OF FACTS

8. Darnell Berryman was a 20-year old employee of Exterran. Exterran manufactures compressors and Darnell was a helper in the machine shop. On or about February 22, 2009, Darnell was cut across the right side of his face with a knife by an unknown assailant. He was treated at Houston Northwest Medical Center, Emergency Department, where his wounds were closed with 17 stitches. The emergency room physician prescribed Keflex 500mg, Motrin 600mg, and Vicodin. Prior to this incident, Darnell had a history of sleep apnea. He occasionally used a breathing machine to help him sleep. On February 28, 2009, Darnell was rushed back to Houston Northwest Medical Center. He was pronounced dead at 10:46 a.m. The death certificate and the autopsy report both listed the cause of death as "Acute Toxicity due to the Combined Effects of Hydrocodone, Alprazom, Carisprodol, and Promethazine". The manner of death described on the autopsy is "Accident".

9. On March 4, 2009, Plaintiff submitted a claim for accidental death benefits to Defendant pursuant to

2

the terms of the Plan. Defendant denied Plaintiff's claim by letter dated June 12, 2009, stating that the policy provisions prohibited payment. The provisions relied on by Defendant were as follows:

*COMMON EXCLUSIONS*

*In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the Description of Benefits Section:*

> *7. Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food;*

> *11. voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage.*

These policy provisions were contained in a Group Accident Policy, policy number OK 963560, issued to Exterran by Defendant with a policy effective date of January 1, 2008.

10. On July 27, 2009, Defendant received, by certified mail, return receipt requested, Plaintiff's request for a complete copy of Exterran's Summary Plan Description and all Plan Amendments in effect on the date of disability or date of application for benefits, among other things. Defendant never provided Plaintiff with a copy of the Summary Plan Description. This action and omission violated 29 U.S.C. §1022(a). The Summary Plan Description for Exterran, acquired by Plaintiff after the date Plaintiff's Original Complaint was filed, does not contain most of the provisions relied on by Defendant in denying Plaintiff's claim for accidental death benefits. Only the language contained in Common Exclusion number 7 is contained in the SPD. Defendant did not review or consider the SPD in its consideration and denial of Plaintiff's claim, according to the June 12, 2009, denial letter and the November 5, 2009, denial of appeal letter.

11. With regard to exclusions or circumstances in which accidental death benefits would not be paid, the SPD states, in pertinent part, as follows:

3

> *"What's Not Covered: Accidental Death and Dismemberment*
>
> > The AD&D Plan does not pay benefits for any loss caused by or resulting from any one of the following:
> >
> > - Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food"

When the terms of an insurance policy and an SPD conflict, the terms of the SPD control and are binding. <u>Washington v. Murphy Oil USA, Inc.</u>, 497 F.3d 453, 457 (5th Cir. 2007). Darnell Berryman's death was not caused by nor did it result from a sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical treatment of same. Defendant's denial of accidental death benefits to Plaintiff was, therefore, erroneous.

12. Though the SPD was not considered by Defendant in its denial of Plaintiff's claim for benefits, one of the reasons given for denying the claim is the contention, made in its June 12, 2009, denial, that Darnell Berryman's pre-existing sleep apnea was a sickness or bodily infirmity that was noted as a cause of his death by the Harris County Medical Examiner. However, that report merely lists "Clinical history of sleep apnea…" on the Pathologic Diagnoses page along with obesity, history of recent assault, and hepatic steatosis, (better known as fatty liver, a reversible condition common in people with obesity, diabetes, or hypertension), among others. Neither the death certificate nor the autopsy otherwise list sleep apnea as a cause of Darnell Berryman's death. The Pathologic Diagnoses page cannot, therefore, be construed to mean that sleep apnea was a cause of death any more than obesity, history of recent assault, and hepatic steatosis can be construed to be a cause of death. Even if these pre-existing conditions indirectly or in part contributed to Darnell Berryman's inability to recover from acute toxicity resulting from a combination of prescription drugs, Plaintiff would still be entitled to the accidental death benefits because, in accordance with the SPD, the death was not caused by nor did it result from, meaning originating directly from, sleep apnea.

13. Defendant's November 5, 2009, denial did not mention the Harris County Medical Examiner's

4

inclusion of sleep apnea on its Pathologic Diagnoses page, but, instead relied on the report of its toxicologist, Frederick W. Fochtman, Ph.D., DABFT, which stated, in part, that sleep apnea "could be contributory to the inability to overcome the respiratory depression caused by the CNS depressant drugs". Dr. Fochtman did not state that sleep apnea caused the death of Darnell Berryman. The main point here and about Dr. Fochtman is that the medical examiner did not find that Darnell Berryman's death was due to CNS, (central nervous system depression), and respiratory depression. Such a diagnosis is not contained in the autopsy or the death certificate. Dr. Fochtman is a toxicologist, not a medical doctor or medical examiner. His opinion that Darnell Berryman's sleep apnea could be contributory to the inability to overcome respiratory depression, a condition that was not found to have been a cause of death by the official county medical examiner, cannot, therefore, be given any credence.

14. Defendant's reliance on Dr. Fochtman's opinion as to the cause of death, even though it contradicted the medical examiner's report, constituted a breach of its fiduciary duty to Plaintiff and was arbitrary and capricious. Defendant's reliance on the portion of the insurance policy provision that excludes coverage if the loss is caused in part or indirectly from sickness, disease, bodily or mental infirmity, or medical or surgical treatment thereof, rather than the SPD, constituted a breach of its fiduciary duty to Plaintiff and was arbitrary and capricious.

15. Defendant did not acquire the toxicologist's report until October 30, 2009, four months after its June 12, 2009, denial of benefits rightfully due Plaintiff for the accidental death of her son.

16. To the extent that the group insurance policy provisions are somehow determined to control over the conflicting SPD provisions, Plaintiff restates all of the preceding facts, allegations, and contentions and further complains of Defendant's actions and omissions in the paragraphs that follow.

17. Defendant further justified its denial of benefits to Plaintiff by claiming that the autopsy found that "Darnell Berryman's overuse of Vicodin, in combination with carisprodol, alprazolam, and promethazine, significantly contributed to his death." Defendant applied the group insurance policy common exclusion number 11 for this denial. But neither the autopsy report nor the death certificate

5

state that there was any "overuse" or "overdose" of any medication or drug. The cause of death was, instead, stated as toxicity due to the "combined effects" of several different drugs.

18. Defendant's toxicologist did not state that Darnell Berryman's death was caused by an overdose of any drug or medication. In fact, the report states that the "combination of hydrocodone with carisprodol and alprazolam would produce an addictive effect of CNS and respiratory depression." Dr. Fochtman did not say that an <u>overdose</u> of Vicodin, (hydrocodone-acetaminophen), in combination with other drugs would produce CNS. So, even if the hydrocodone in Darnell Berryman's blood was within the normal therapeutic level, the CNS would have occurred. The CNS was not, therefore, caused by, nor did it result from, the voluntary ingestion of hydrocodone in an amount greater than the prescribed dosage. More important, though, is the fact that neither the autopsy nor the death certificate agree with Dr. Fochtman's contention that CNS or respiratory depression were the causes of Darnell Berryman's death.

19. The conclusions made by Dr. Fochtman must otherwise be challenged because he stated that Darnell had not received a prescription for promethazine, even though Plaintiff provided that prescription to Defendant a month prior to Dr. Fochtman's report. Defendant's decision to withhold the promethazine prescription from Dr. Fochtman necessarily resulted in a flawed report, and constituted a breach of the fiduciary duty Defendant owed to Plaintiff.

20. Defendant's other reason for denying Plaintiff's claim is its contention that it could not identify valid prescriptions for carisprodol, alprazolam, and promethazine. But, Plaintiff provided Defendant with the prescription for promethazine in September 2009, almost two months prior to its November 2009, denial of the claim. The fact that Defendant conducted a pharmacy canvass prior to its June 2009, initial denial and did not find the prescription for promethazine at Northwest Pharmacy, which is located very near Houston Northwest Medical Center, where Darnell Berryman was twice treated, suggests that Defendant's pharmacy canvassing was limited and/or ineffective.

6

21. Moreover, the insurance policy does not require that there be a prescription for drugs if they are, alternatively, "taken under the direction of a Physician and taken in accordance with the prescribed dosage." Defendant disregarded the policy by ignoring the possibility that a drug may be taken under the direction of a physician without a prescription. Lastly, as Dr. Fochtman admits in his report, the Laboratory Report of the Harris County Medical Examiner does not specify a quantity of carisprodol, promethazine, and meprobomate in Darnell Berryman's blood, (the results are stated as being less than 10 mg/L, 0.25 mg/L, and 25mg/L, respectively), so no determination can be made as to the therapeutic levels of these drugs in his system. The amount of alprazolam found in Darnell's blood was "consistent with a therapeutic concentration" according to Dr. Fochtman. There was no proof that the drugs for which no prescription was found, carisprodol and alprazolam, were not taken in accordance with the prescribed dosage. Defendant's factual conclusions and interpretation of the Plan terms were, thus, erroneous.

22. Defendant's November 5, 2009, denial of Plaintiff's appeal gives a different second reason for refusing to pay Plaintiff's claim. There, Defendant states that, because Darnell Berryman was taking prescription medications for pain and other health conditions, any loss resulting from his prescription medications would not be a covered loss. Defendant did not identify any prescription medicine that resulted in Darnell Berryman's death. This vague, general, and non-specific justification for denial of Plaintiff's benefits violates federal law and the insurance policy terms, which require Defendant to state the specific reasons the claim was denied. It demonstrates, also, that Defendant's denial of Plaintiff's claim was arbitrary and capricious.

23. Pursuant to 29 C.F.R. §2560.503-1(f)(3) and the Plan, Defendant had 90 days from the date the claim was submitted, March 4, 2009, to make its initial claim decision. The claim was denied on June 12, 2009, more than 90 days after the submission and was, therefore, not timely. Defendant did not request any extension of the deadline to make its decision, did not inform Plaintiff that an extension would be necessary due to matters beyond its control, and did not notify her of any circumstances

7

requiring the extension and the date by which it expected to render a decision.

## IV.
## STANDARD OF REVIEW

24. Defendant's factual conclusions and Plan interpretations are to be reviewed with an arbitrary and capricious standard. <u>Pierre v. Connecticut General Life Ins. Co.</u>, 932 F.2d 1552 (5th Cir. 1991).

## V.
## DENIAL OF BENEFITS ARBITRARY AND CAPRICIOUS

25. Defendant owed Plaintiff a fiduciary duty to act in the best interest of Plaintiff and the Plan for the sole purpose of providing benefits to Plaintiff. Defendant was acting as the claims fiduciary as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1102(16) and (21). Pursuant to ERISA and well-established federal common law, a fiduciary duty is imposed on Defendant to treat Plaintiff fairly and reasonably, conduct a full and fair review of the claim, and act in Plaintiff's best interest. The pertinent statute expressly states that ERISA fiduciaries must act solely in the interest of the ERISA plan's participants and beneficiaries and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1)(A). One court referred to ERISA's fiduciary duty standards as "the highest known to the law." <u>Donovan v. Bierworth</u>, 680 F.2d 263, 272, n.8 (2nd Cir. 1982). The United States Supreme Court recently referred to ERISA's fiduciary duty standards as requiring "higher-than-marketplace" standards of conduct. <u>Metropolitan Life v. Glenn</u>, 128 S. Ct. 2343, 2350 (2008). Any failure to act in compliance with this standard is a breach of Defendant's fiduciary duty, which could result in a finding that Defendant's factual conclusions supporting the denial of benefits to Plaintiff were arbitrary and capricious.

26. Defendant's failure to act in good faith in its review, investigation and determination of Plaintiff's claim, as set forth above, as well as its bad faith in violating applicable federal regulations and breach of fiduciary duty, demonstrates that the factual conclusions made by Defendant in denying benefits to Plaintiff were arbitrary and capricious.

27. Pursuant to the terms of the Plan, Plaintiff is entitled to receive, as a beneficiary of the Plan, accidental death benefits for the accidental death of Darnell Berryman. Defendant applied the common exclusions of the group accident insurance policy, rather than the applicable exclusion in the SPD in determining Plaintiff's eligibility to accidental death benefits. Defendant failed to adequately canvass for prescriptions given to Darnell Berryman and failed to find the prescription for promethazine, later found by Plaintiff. Defendant failed to inform its expert that there was a prescription for promethazine for Darnell Berryman that Plaintiff had provided. Defendant interpreted the insurance policy to require that there be a prescription for all drugs found in Darnell Berryman's body, contrary to the insurance policy. Defendant determined that sleep apnea was a cause of Darnell Berryman's death though there are no medical documents that confirm this. Defendant determined that sleep apnea was a cause of Darnell Berryman's death when the evidence confirms that sleep apnea did not initiate or start the condition that resulted in his death. In each instance, Defendant placed its own interest above Plaintiff's.

28. Plaintiff seeks additional damages and penalties for Defendant's failure and refusal to provide a copy of the SPD, pursuant to 29 U.S.C. §1132(c).

29. Plaintiff is entitled to the application of Texas law in the interpretation of the contract forming the terms of the Plan as well as the application of the terms regarding Plaintiff's legal and equitable remedies against Defendant.

## VI.
## DEFENDANT'S CONFLICT OF INTEREST

30. Defendant is an insurance company acting as both claims administrator and claims fiduciary to Plaintiff and the Plan. As such, Defendant suffers an inherent conflict as both insurer and fiduciary and its factual findings and conclusions denying Plaintiff's rightful claims are to be considered with less deference upon review.

31. As a result of Defendant's high degree of conflict inherent in the handling and determination of

Plaintiff's claim, the Court should apply a less deferential *de novo* review of the Defendant's factual findings and determinations.

## VII.
## PLAINTIFF'S CLAIMS FOR ATTORNEY FEES AND COSTS

32. Pursuant to 29 U.S.C. §1132 (g), Plaintiff seeks an award of his reasonable attorney's fees and costs of court in connection to her just pursuit of this action against Defendant.

## VIII.
## PRAYER

33. Plaintiff respectfully prays that upon trial of this matter that this Honorable Court find in favor of Plaintiff and against Defendant and issue judgment against Defendant as follows:

   a. That Defendant pay to Plaintiff all benefits due and owing to Plaintiff consistent with the terms of the plan as well as all interest due thereon and as allowed by law;

   b. That Defendant pay all reasonable attorney's fee and costs associated with the prosecution of this matter; and

   c. That Defendant pay a penalty for failing and refusing to provide Plaintiff with a copy of the SPD within 30 days after formal request for same had been made.

   d. For all other such relief, whether at law or in equity, to which Plaintiff may show herself so justly entitled, including the remand of this claim, if so required by law.

Respectfully submitted,

By: /s/ Sylvester Anderson
SYLVESTER ANDERSON
Attorney In Charge for Plaintiff
State Bar# 01214950
SDT# 5012
Regency Square Tower
6200 Savoy, Suite 250
Houston, Texas 77036
(713) 533-9500
(713) 533-9645 (Fax)

## CERTIFICATE OF SERVICE

      I hereby certify that on May 25, 2010, a true and correct copy of Plaintiff Belinda Bullard's First Amended Complaint was forwarded by regular United States mail to:

Claire W. Parsons  
Wilson, Elser, Moskowitz, Edelman, & Dicker, LLP  
5847 San Felipe, Suite 2300  
Houston, Texas 77057-4033  
Attorney for Defendant Life Insurance  
Company of North America

                                                              SYLVESTER ANDERSON

SYLVESTER ANDERSON
ATTORNEY & COUNSELOR AT LAW
REGENCY SQUARE TOWER
6200 SAVOY, SUITE 250
HOUSTON, TEXAS 77036

BOARD CERTIFIED
PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF
LEGAL SPECIALIZATION

TELEPHONE
713-533-9500
FACSIMILE
713-533-9645

May 25, 2010

The Honorable David Bradley
Clerk of Court
United States District Court
P.O. Box 61010
Houston, Texas 77208

RE: No. H-10-735; *Belinda Bullard v. Life Insurance Company of North America*, In The United States District Court, Southern District of Texas

Dear Mr. Bradley:

Enclosed is Plaintiff Belinda Bullard's First Amended Complaint. Please file same in your usual and customary manner. A true and correct copy of the foregoing document has been forwarded to all appropriate counsel of record. This amended complaint was agreed to, pursuant to Fed. R. Civ. P. 15(a)(2), by counsel for Defendant Life Insurance Company of North America.

Thank you for your assistance.

Sincerely,

Sylvester Anderson

SA/kd
Encl.