**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BELINDA BULLARD, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-735 |
| | § | |
| LIFE INSURANCE COMPANY OF | § | |
| NORTH AMERICA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is an ERISA dispute. The issue is the scope of the claim administrator's work on remand when the parties have agreed to the remand. The plaintiff claimants ask this court to limit the remand to the existing administrative record, with an instruction on the relevant law. The defendant insurer/claims administrator asks this court to allow it to reopen the investigation to obtain additional factual information and medical records.

Based on the pleadings, the parties' briefs, the arguments of counsel, and the applicable law, this court orders that: this case be remanded, as the parties recognized was appropriate; the parties may reopen the administrative record to conduct additional medical investigation and add to the administrative record information relevant to the factual determinations needed to decide benefit eligibility, specifically, whether Darnell Berryman's death was a loss "caused by or resulting from" sleep apnea; and the analysis on remand must follow the recognized rule that when the terms of an insurance policy and the Summary Plan Description Conflict, the SPD terms control and any ambiguities resulting from the conflict be resolved in favor of coverage. LINA must complete its review and provide a decision by **March 11, 2011**.

The reasons for these rulings are stated below.

## I. Background

The plaintiffs, Belinda Bullard and Carnile Berryman, seek accidental death benefits arising from the death of their son, Darnell Berryman. The defendant, Life Insurance Company of North America (LINA), issued a policy to insure the accidental death benefit portion of an ERISA plan maintained by Exterran Energy Solutions, LP, Darnell Berryman's employer. LINA is also the claims administrator for the plan.

Darnell Berryman died six days after receiving 17 stitches for a knife wound to his face. He was prescribed medication after the stitches. He also had a history of sleep anea. The death certificate and autopsy report listed the cause of death as "Acute Toxicity due to the Combined Effects of Hydrocodone, Alprazom, Carisprodol, and Promethazine." (First Amended Complaint, Docket Entry No. 7-1, ¶ 9).

LINA denied the parents' claim for benefits. In their first amended complaint, the plaintiffs allege that LINA cited the policy exclusion for "any Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from . . . sickness, disease, bodily or mental infirmity." The plaintiffs allege that LINA also cited the policy exclusion for "voluntary ingestion of any narcotic [or] drug . . . unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage." The first policy exclusion was cited as grounds for denying the claim based on Darnell Berryman's clinical history of sleep apnea as a "sickness or bodily infirmity." LINA cited a report by its toxicologist stating that sleep apnea "could be contributory to the inability to overcome the respiratory depression caused by the CNS depressant drugs." The plaintiffs contend that this opinion contradicts the medical examiner's report on the cause of death. The plaintiffs

allege that LINA cited the second exclusion as an additional ground for denying the claim on the basis that "Darnell Berryman's overuse of Vicodin, in combination with carisprodol, alprazolam, and promethazine, significantly contributed to his death." (Docket Entry No. 7-1, ¶ 18). The plaintiffs allege that this contradicts the autopsy report and the toxicologist's report, which did not identify any overdose or overuse and did not identify CNS or respiratory depression as the cause of death. The plaintiffs also point out that contrary to the toxicologist report statement, Darnell Berryman had a prescription for at least some of the drugs.

The plaintiffs' main argument is that in addition to the factual inaccuracies in LINA's stated reasons for denying the claim, the wrong legal standard was applied. LINA cited the two policy exclusions. LINA made no reference to the language of the Summary Plan Description. The plaintiffs assert that the first policy exclusion, for a covered loss "which, *directly or indirectly, in whole or in part, is caused by or results from* . . sickness, disease, bodily or mental infirmity," conflicts with the SPD. The relevant language in the SPD states:

**What's Not Covered: Accidental Death and Dismemberment**

> The AD&D Plan does not pay benefits for any loss *caused by or resulting from* any one of the following:
>
> • Sickness, disease, bodily or mental infirmity . . .

(Docket Entry No. 7-1, ¶ 12, emphasis added). The plaintiffs emphasize that the SPD language is a narrower standard for causation than the policy exclusion and argue that LINA erred in denying their claim because their son's death was not "caused by nor did it result from a sickness, disease, bodily or mental infirmity." (*Id.*).

With respect to the second policy exclusion LINA cited, for the 'voluntary ingestion of drugs," the plaintiffs allege that this exclusion is not in Exterran's SPD for the accidental death

3

benefit plan. As a result, according to the plaintiffs, it cannot serve as a basis for denying benefits.

LINA denies that it erred in rejecting the plaintiffs' claim for benefits based on the 'sickness, disease, or bodily infirmity" exclusion. LINA acknowledges, however, that "if Plaintiffs' allegations are assumed to be true, the Policy arguably provides a lesser standard for applying the "sickness, disease, or bodily infirmity" exclusion than the SPD. Specifically, the Policy would allow LINA to deny a claim if a covered loss is 'indirectly' or 'in part' caused by a disease, whereas the SPD would only allow LINA to deny a claim for losses 'caused by or resulting from' a disease." (Docket Entry No. 14 at 6). The plaintiffs argue that the SPD definition provides a more rigorous standard for denying a claim for benefits, requiring a finding that sleep apnea was the proximate cause of death and, if not, whether the proximate cause of death was contributed to in some manner by the pre-existing sleep apnea. (Docket Entry No. 15 at 4).

The parties agreed to abate this lawsuit so that LINA could conduct an additional review of the plaintiffs' benefits claim. (*See* Docket Entry No. 10). However, the parties disagree about the scope of the claim administrator's review on voluntary remand. LINA asks that it be given the opportunity to conduct a complete factual review of this claim based on the alleged conflict between the policy and SPD terms. LINA asks that it be able to collect and review medical records, medication prescriptions, independent medical reviews, and other documents and investigative materials needed to determine whether the claim is excluded under the "sickness, disease, or bodily infirmity" exclusion as it is defined in the controlling document and determine whether the plaintiffs are eligible for the accidental death benefits under the allegedly higher standard set by the SPD. The plaintiffs ask that the plan administrator's review be limited to the materials already in the administrative record for this claim and that the administrator be instructed to follow the rule that

4

a conflict between policy and SPD terms requires applying the SPD. The plaintiffs assert that they did not consent to a remand with a broader scope.

During a hearing, the court heard argument on the disputed scope of the voluntary remand and asked the parties to brief the case law supporting their positions. The parties provided helpful briefs. The arguments are analyzed in light of the applicable law.

**II.     Analysis**

Under ERISA, a claim for benefits begins with the plan administrator. When a plan administrator considers a claim for benefits, it has the obligation to identify the evidence in the administrative record. The administrative record consists of relevant information made available to the plan administrator before the complainant files suit, in a manner that provides the administrator with a fair opportunity to consider it. "It is the plan administrator's responsibility to compile a record that he is satisfied is sufficient for his decision." *Griffin v. Raytheon Co. Long Term Disability Plan No. 558*, Civ. A. No. 3:04-CV-2179-D, 2005 WL 4891214, at *2 (N.D. Tex. 2005), and the claimant must be afforded a reasonable opportunity to contest whether the record is complete. *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir.2000). The administrative record consists of all information submitted to the administrator in a manner that gives the administrator a "fair opportunity to consider it. *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir.1999) (en banc) (noting that plaintiffs can present favorable evidence to the plan administrator, and holding that, "[b]efore filing suit, the claimant's lawyer can add additional evidence to the administrative record simply by submitting it to the administrator in a manner that gives the administrator a fair opportunity to consider it"), *abrogation on other grounds recognized by Holland v. Int'l Paper Co. Retirement Plan*, 576 F.3d 240, 247 n.3 (5th Cir. 2009);

*see also Griffin*, 2005 WL 4891214, at *2 ("Although circumstances can be envisioned in which a 'miscreant plan administrator' in denying a claim conceals evidence that, if disclosed, would have cast doubt on its decision, such evidence (for example, a medical report favoring the claimant) is typically equally available to the claimant, who has a right to include it in the administrative record before the plan administrator's decision".).

ERISA provides federal courts with jurisdiction to review benefits determinations made by fiduciaries or plan administrators. 29 U.S.C. § 1132(a)(1)(B); *see also Lopez ex rel. Gutierrez v. Premium Auto Acceptance Corp.*, 389 F.3d 504, 509 (5th Cir. 2004). A district court's function when reviewing ERISA claims is like an appellate court's. "[The court] does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1st Cir.2002). Courts cannot consider additional evidence "resolve the merits of the coverage determination—*i.e.* whether coverage should have been afforded under the plan-unless the evidence is in the administrative record, relates to how the administrator has interpreted the plan in the past, or would assist the court in understanding medical terms and procedures." *Crosby v. La. Health Serv. & Indem. Co.*, — F.3d —, No. 10-30043, 2010 WL 5356498 (5th Cir. Dec. 29, 2010) (slip op. at 6). A claimant is not permitted to explore, through discovery in an ERISA lawsuit, what information a plan administrator "should have considered" in making its benefits determination, as opposed to analyzing the information that the plan administrator "did consider" in making its decision. *Griffin*, 2005 WL 4891214, at *2.

When a court determines that a plan administrator's decision is arbitrary and capricious, a court may determine that it can award benefits or it may remand the case for further evaluation.

*Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1194 (10th Cir. 2007), *abrogation on other grounds recognized by Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187 (10th Cir. 2009). Awarding benefits without remand is appropriate "only if the evidence clearly shows that the administrator's actions were arbitrary and capricious, or the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Lafleur v. La. Health Sevrv. & Indem. Co.*, 563 F.3d 148, 158 (5th Cir. 2009) (quoting *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288–89 (10th Cir. 2002)). "If the administrative record reflects, at minimum, a colorable claim for upholding the denial of benefits, remand is usually the appropriate remedy." *Id.* (citing *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (5th Cir. 2008)); *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994) (if a district court finds that the plan administrator had insufficient evidence before it to determine whether the insured met the plan definition of disability, the appropriate relief is remand of the case to the plan administrator with instructions to take additional evidence); *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1175 (10th Cir. 2006) (if the plan administrator "fail[s] to make adequate findings or to explain adequately the grounds of [its] decision, the proper remedy is to remand the case to the administrator for further findings or explanation."); *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996) ("The remedy when a court or agency fails to make adequate findings or to explain its grounds adequately is to send the case back to the tribunal for further findings or explanation. . . . This is the appropriate remedy in an ERISA case just as in a conventional appeal.") (internal citations omitted); *Blum v. Spectrum Restaurant Grp., Inc.*, 261 F. Supp. 2d 697, 710–11 (E.D. Tex. 2003) (the proper remedy for an incomplete administrative record is to remand to the plan administrator, not consideration of evidence outside the administrative record by a district court; if

there is no request for remand to the plan administrator and the plaintiff asserts that pursuing further administrative remedies would be futile, the court must limit its review to the administrative record in considering the plaintiff's ERISA claim); *Collinsworth v. AIG Life Ins. Co.*, 404 F. Supp. 2d. 911, 923 (N.D. Tex. 2005) (remand is appropriate because the defendant's factual analysis was based on an erroneous interpretation of the benefit plan, requiring additional factual determinations to be made to determine if the plaintiff was eligible for benefits, the defendant had provided some evidence to support its decision, and there was no evidence of excessive delay on the defendant's part.)

The Fifth Circuit has also recognized that voluntary remand to the plan administrator may be appropriate. *See Barhan v. Ry-Ron, Inc.*, 121 F.3d 198, 202 n. 5 (5th Cir. 1997) ("[I]f either party concludes that additional factual development is necessary, it may move to remand to the plan administrator for further factual development."). Generally, however, each party should make its record with the plan administrator before the case comes to federal court. *Vega*, 188 F.3d at 302 n.13. Allowing parties a second opportunity to develop the record dilutes their incentive to develop the record at the first opportunity. *Id.; see also Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 n. 4 (5th Cir. 2000) (one of the purposes of the ERISA exhaustion requirement is "providing a clear record of administrative action if litigation ensues"). And allowing a case to "oscillate" between courts and administrative proceedings prolongs the case. *Vega*, 188 F.3d at 302 n. 13.

The issue in the present case is whether the claim administrator may add to the record when the parties have agreed to remand because the claim administrator arguably applied an incorrect standard in making the factual determination on benefit eligibility. The parties assert that they have

found no cases identifying limits on the scope of remand when the remand is voluntary. But even if the parties had not agreed to the remand, this court would order it because the standards for remand are met. The cases discussing the scope of remand apply even if they do not involve voluntary remands.

This record in this case shows that LINA's original determination was based on two policy exclusions. One of those exclusions was different from a similar provision in the SPD. The policy allowed the plan administrator to exclude benefits on a slight showing of a causal link between the insured's preexisting sleep apnea and his death. The SPD required a more stringent showing that the preexisting sleep apnea caused the death. LINA did not consider the SPD exclusion. This was error. *See Washington v. Murphy Oil USA, Inc.*, 497 F.3d 453, 457 (5th Cir. 2007); *see also Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir. 1991) ("[T]he summary plan description is binding, and [ ] if there is a conflict between the summary plan description and the terms of the policy, the summary plan description shall govern."). An insured need not have relied on the SPD for the terms in that document to control over inconsistent policy terms. *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 644 n.12 (5th Cir. 1999) ("This Court has never held that an ERISA claimant must prove reliance on a summary plan description in order to prevail on a claim to recover benefits."). "[A]mbiguity in the summary plan description must be resolved in favor of the employee and made binding against the drafter." *Hansen*, 940 F.2d at 982. LINA also applied the exclusion for voluntary drug use, which is not in the SPD. "When, as here, the administrator construes a plan provision erroneously, the court should not decide itself whether benefits should be awarded but rather should remand to the administrator for it to make that decision under the plan, properly construed." *Collinsworth*, 404 F. Supp. 2d at 923 (quoting *Saffle v. Sierra Pac. Power Co.*

9

*Bargaining Unit Long Term Disability Income Plan*, 85 F.3d 455, 456 (9th Cir. 1996)) (alterations omitted)

LINA argues that given the more stringent causal relationship required to exclude coverage for the death under the SPD and other differences between the policy and SPD exclusions and definitions, it needs to obtain additional medical information to enable it to determine whether the death was covered. The plaintiffs respond that the inquiry under the SPD exclusion is narrower than under the policy, making it unnecessary to obtain additional information. But the inquiry is not narrower in the sense of requiring less medical information or less analysis of that information. To the contrary, because the standard for excluding coverage is more stringent under the SPD than under the policy provisions that LINA applied, LINA needs to conduct a more searching inquiry that will likely require investigation to obtain additional medical information. Not only must LINA apply a more stringent standard, the plaintiffs have also alleged that LINA obtained incomplete records on the deceased's prescription drugs and non-prescription but medically supervised or appropriate drug usage. These allegations are an additional reason the inquiry requires additional investigation into relevant medical information.

On remand, LINA must perform a full and fair review of whether Darnell Berryman's death was sufficiently linked to his preexisting sleep apnea to fall within the SPD exclusion. This investigation is authorized to include additional investigation and supplementation of the administrative record. While this result will lead to some additional delay in the processing of plaintiff's claim, it fosters the strong policy favoring the internal administrative resolution of ERISA claims. *See Bernstein*, 70 F.3d at 788-89 (emphasizing "the importance of promoting internal resolution of claims and encouraging informal and non-adversarial proceedings under ERISA"). It

is also appropriate that the remand order impose a 90 day deadline in which LINA must furnish the plaintiffs with a formal written decision.

On remand, the parties may conduct additional medical investigation and add to the administrative record relevant to LINA's determination of benefit eligibility, specifically, whether Darnell Berryman's death was a loss "caused by or resulting from" sleep apnea. The benefit determination must be made under the binding Fifth Circuit law that when the terms of the policy and SPD conflict, the SPD controls and any ambiguity must be resolved in favor of coverage. LINA must complete its review and provide a decision no later than **March 11, 2011**.

SIGNED on January 3, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge